IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

| | |
|---|---|
| BRIAN N. SHEPHERD,<br><br>Plaintiff,<br><br>v.<br><br>MERRICK B. GARLAND,<br>Attorney General of the United States,<br><br>Defendant. | <br><br><br><br>CIVIL ACTION NO.: 5:20CV258<br>(KLEEH) |

## REPORT AND RECOMMENDATION

This case comes before the undersigned Magistrate Judge pursuant to an Order of Referral [ECF No. 17] entered August 30, 2021. Currently pending are cross Motions for Summary Judgment. Oral argument would not significantly aid in the decisional process. Accordingly, the undersigned has considered the Motions and now makes the following recommendations to the District Judge.

## I.
## FACTUAL/PROCEDURAL HISTORY

This matter arises out of an incident which occurred on June 7, 2014, when Plaintiff was attending a party where he became intoxicated. He claims that he was depressed over the death of his brother, whom he believes was murdered. Plaintiff got into an altercation at the party, as a result of which he suffered numerous injuries, including a concussion. He was transported to Weirton Medical Center in Weirton, WV, where he was treated for his injuries. While there, the mother of one of the persons with whom he fought executed an application for involuntary

hospitalization. The application alleged that Plaintiff had threatened persons with bodily injury and that he had threatened suicide. ECF No. 1.

On or about June 8, 2014, the Brooke County Circuit Court conducted a Mental Health Probable Cause Hearing based upon the aforementioned application. After the Probable Cause Hearing, Plaintiff was transported to Ohio Valley Medical Center ("OVMC") for evaluation, and treatment if necessary and appropriate. He was released from OVMC on June 12, 2014. Plaintiff claims that he was released from OVMC prior to any final commitment proceeding and has never been adjudicated as a mental defective. Notwithstanding, Plaintiff was notified that he is prohibited from possessing or owning a firearm as a result of the aforementioned hospitalization. Plaintiff argues that he was wrongly placed on the register of persons prohibited from possessing a firearm, and he seeks removal of his name from the same. ECF No. 1. *See also* ECF No. 11.

Plaintiff filed his Motion for Summary Judgment on June 14, 2021. ECF No. 11. Defendant filed a Motion for Summary Judgment on July 9, 2021. ECF No. 12. Plaintiff filed a Response to Defendant's Motion for Summary Judgment on July 29, 2021. ECF No. 15. Defendant filed a Reply to Plaintiff's Motion for Summary Judgment on August 12, 2021. ECF No. 16.

## II.
## APPLICABLE LAW

Inasmuch as Plaintiff and Defendant have filed competing Motions for Summary Judgment, rule 56 of the Federal Rules of Civil Procedure is implicated here. "Summary Judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Lawson v. Union Cty. Clerk of Court*, 828 F.3d 239, 247 (4th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).

## III.
## DISCUSSION

After thoroughly considering the parties' arguments and the relief requested by Plaintiff, it appears that this matter turns upon one issue: whether Plaintiff was "committed to a mental institution" as contemplated by 18 U.S.C. § 922(g)(4).[1] For the reasons set forth below, the undersigned would conclude that Plaintiff was not "committed to a mental institution" as contemplated by 922(g)(4). Therefore, he was wrongly placed on the federal register of persons prohibited from possessing a firearm.

18 U.S.C. § 922(g)(4) provides in relevant part as follows:

> It shall be unlawful for any person…who has been adjudicated as a mental defective or who has been committed to a mental institution…to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Thus, in order for a person to be barred from possessing a firearm under 922(g)(4), as Plaintiff is here, said person would have to have been "adjudicated as a mental defective" or "committed to a mental institution." The mental health proceeding which gave rise to Plaintiff's disability from possessing firearms occurred in West Virginia State Court, and specifically Brooke County Circuit Court. Therefore, the undersigned will look to the West Virginia Code for guidance as to whether Plaintiff was adjudicated as a mental defective or committed to a mental institution for purposes of 18 U.S.C. § 922(g)(4).

Chapter 61, article 7A of the West Virginia Code governs the State Mental Health Registry and Reporting of Persons Proscribed from Firearm Possession Due to Mental Condition to the National Instant Criminal Background Check System. W.Va. Code § 61-7A-2 defines the terms

---

[1] The Government argues that Plaintiff is making an as-applied Second Amendment challenge. Based upon Plaintiff's briefs, the undersigned does not believe that this is an argument Plaintiff is pursing in this matter. As a result, the undersigned will not address said argument beyond this footnote.

3

used in article 7A. Importantly, the terms defined in the aforementioned section are "the terms as [they] are deemed to mean in 18 U.S.C. § 922(g)." *Id.*

Under W.Va. Code § 61-7A-2, "[a] person adjudicated as a mental defective" is:

[a] person who has been determined by a duly authorized court, tribunal, board or other entity to be mentally ill to the point where he or she has been found to be incompetent to stand trial due to mental illness or insanity, has been found not guilty in a criminal proceeding by reason of mental illness or insanity or has been determined to be unable to handle his or her own affairs due to mental illness or insanity.

There is no evidence that Plaintiff was ever "adjudicated as a mental defective." Indeed, there is no evidence that Plaintiff was found incompetent to stand trial; not guilty of a crime by reason of insanity; or, unable to handle his own affairs due to a mental illness or insanity. Consequently, in order for the State of West Virginia to have placed Plaintiff in the State Mental Health Registry as a person prohibited from possessing a firearm, and for his name to have been given to the National Instant Background Check System, Plaintiff must have been "committed to a mental institution" as defined in W.Va. Code § 61-7A-2. A close examination of W.Va. Code § 61-7A-2 reveals that he was not committed to a mental institution within the meaning of this code section, however.

To be "[c]ommitted to a mental institution" within the meaning of W.Va. Code § 61-7A-2, a person must "have been involuntarily **committed for treatment** pursuant to the provisions of chapter twenty-seven of this code." W.Va. Code § 61-7A-2(2) (emphasis added). A review of the evidence of record shows that Plaintiff was never treated for mental illness. Rather, Plaintiff was held in custody for approximately three (3) to four (4) days while he was evaluated. He was found not to suffer from any mental illness and was discharged. ECF No. 1-1 at p. 8 ("[Dr. Paul Papadimitriou] assessed him for a mental illness but, could find none. [Dr. Paul Papadimitriou] therefore did not prescribe any medications."); ECF NO. 11. The fact that there is no evidence that Plaintiff's case ever proceeded to a final commitment hearing pursuant to W. Va. Code § 27-

4

5-4 provides further support for the conclusion that Plaintiff was not committed for treatment pursuant to the provisions of Chapter 27 of the West Virginia Code.

The Code of Federal Regulations provides even more support for the conclusion that Plaintiff was not "committed to a mental institution" within the meaning of 18 U.S.C. §922(g)(4). 27 C.F.R. § 478.11[2] defines "committed to a mental institution" as:

> [a] formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes a commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. **The term does not include a person in a mental institution for observation** or for a voluntary admission to a mental institution.

(Emphasis added.) Here, Plaintiff's stay at OVMC can at most be categorized as a stay for observation. Again, Plaintiff was held for three (3) to four (4) days while he was evaluated. He was found not to suffer from any mental illness and discharged.

In arguing that Plaintiff was committed to a mental health institution as provided in 18 U.S.C. § 922(g)(4), Defendant appears to rely heavily upon the evidence which predates Plaintiff's confinement to OVMC, i.e. the mental health application and the Brooke County Circuit Court Probable Cause Order. While these are important pieces to the puzzle, these pieces of evidence are not the whole picture. The course of Plaintiff's stay at OVMC and the physician's conclusions upon discharge must be taken into account here. After detailed observation and evaluation by mental health professionals, it was determined that Plaintiff did not suffer from mental illness. He received no treatment for mental illness. In effect, the mental health commissioner and those persons who petitioned for Plaintiff to be taken into custody were under the mistaken impression that Plaintiff suffered from a mental illness. In an imperfect system, this

---

[2] "While some of the terms in Section 922(g)(4) may have clear plain meanings, the Code of Federal Regulations defines...committed to a mental institution." *Wilborn v. Barr*, 401 F.Supp.3d 501, 506 (E.D. Pa. 2019) (internal quotations omitted).

can be expected to happen. When it does, as it has here, the effects of the same should be addressed.

Alternatively, Defendant argues that Plaintiff must seek redress through the state courts of West Virginia and Ohio to have his ability to possess firearms reinstated. Plaintiff correctly observes, however, that he is not a citizen of West Virginia, so the West Virginia statute would not apply to him. *See* W.Va. Code § 61-7A-5 (providing relief for persons who "petition the circuit court of the county of his or her residence"). There is also no similar remedy under the Ohio code section cited by Defendant. As the undersigned reads Ohio Revised Code § 2923.14, this code section is designed to afford relief to persons disabled from possessing firearms under Ohio law. Plaintiff's firearms disability did not arise under Ohio law. Regardless, Plaintiff seeks the ability to possess a firearm under <u>federal</u> law, not state law. Defendant's argument on this point is therefore not persuasive.

Finally, in opposing Plaintiff's request for relief, Defendant argues that Plaintiff should not be permitted to collaterally attack the Brooke County Circuit Court's Probable Cause Order. Defendant cites *United States v. Collins*, 2018 WL 3084708, at *3-4 (S.D. W.Va. June 22, 2018) in support of this argument. A review of *Collins* reveals that Defendant's reliance upon this case is misplaced.

On April 3, 2018, Mr. Collins was indicted in the Southern District of West Virginia for knowingly making a false statement intended to deceive a firearms dealer and possessing a weapon while being a prohibited person who has been previously adjudicated as a mental defective or committed to a mental institution. Mr. Collins was a prohibited person because of a previous finding by the Raleigh County Circuit Court that he was incompetent to stand trial. *Id.* at *2.

6

On May 29, 2018, Defendant filed a Motion to Dismiss the Indictment and a Motion to Strike Surplusage from Count Two. In support of his Motion to Dismiss, Mr. Collins, among other things, attacked the State Court Order finding him incompetent to stand trial and committing him for treatment, arguing that it should be overturned. In particular, Mr. Collins argued that the medical professional who evaluated Mr. Collins did not have the requisite information to perform the evaluation and his incompetence was the result of the Southern Regional Jail's failure to give him his prescribed anti-psychotic medication. *Id.* at 2. Judge Berger rejected these arguments and held that the Southern District was not the appropriate venue to litigate the Raleigh County Circuit Court Order committing Mr. Collins. *Id.* at *3.

The *Collins* case is distinguishable from the instant matter on several important points. First, in *Collins*, it was undisputed that Mr. Collins was found incompetent to stand trial. However, in the instant matter, Mr. Shepherd was never found incompetent to stand trial as part of any criminal proceeding. This is not inconsequential. To be found incompetent to stand trial, a showing regarding the same must be made by a preponderance of the evidence. *See* W.Va. Code § 27-6A-3(c). By contrast, the Brooke County Circuit Court's Probable Cause Order is just that: an Order finding probable cause, i.e. that there was "reason to believe" that Mr. Shepherd suffered from a mental illness. *See* W.Va. Code § 27-5-2(a) and (f). Thus, the burden involved in Mr. Collins's case was higher than that required for Mr. Shepherd.

Moreover, in *Collins*, it was undisputed that Mr. Collins received mental health treatment. That is not the case here. There is no evidence that Mr. Shepherd received mental health treatment, Rather, the evidence indicates that Mr. Shepherd did not receive mental health treatment.

Further, and perhaps more to the point, Mr. Shepherd is not attempting to collaterally attack or to litigate the Brooke County Circuit Court's Probable Cause Order. To the contrary,

Mr. Shepherd acknowledges the probable cause finding and argues, in essence, that this Order, without more, is not enough to support a conclusion that he was "committed to a mental institution" within the meaning of 18 U.S.C. § 922(g)(4). In light of the evidence of record and the applicable law, the undersigned would agree with Plaintiff.

## IV.
## RECOMMENDATION

Accordingly, and for all of the foregoing reasons, the undersigned **RECOMMENDS** that **Plaintiff's Motion [11] for Summary Judgment be GRANTED.** The undersigned further **RECOMMENDS** that **DEFENDANT'S Motion [12] for Summary Judgment be DENIED**.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, Plaintiff may file written objections identifying the portions of the Report and Recommendation to which objections are made and the basis for such objections with the Clerk of the Court.

A copy of such objections should also be submitted to the United States District Judge of record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Wright v. Collins*, 766 F.2d 841, 845-48 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985).

The Court **DIRECTS** the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

Respectfully submitted this 30th day of September, 2021.

JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE